IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHARLIE L. HARDIN,            )
                              )
            Plaintiff,        )
                              )
     v.                       )      1:19CV674
                              )
KATY POOLE, et al.,           )
                              )
            Defendants.       )

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This action is based on a *pro se* civil rights Complaint [Doc. #2] filed under 42 U.S.C. § 1983 by Plaintiff Charlie L. Hardin, a prisoner of the State of North Carolina. Plaintiff raises claims against a number of Defendants stemming from uses of force against him on December 26, 2018, as well as related events. The Complaint named fourteen Defendants, eleven of which were served or waived service. They are: Katy Poole, Queen Gerald, Captain Covington, Lt. Mungo, Sgt. Locklear, Officer Wiley, Officer Neil, Officer Douglass, Officer Adams, and Officer Beatha. Those eleven Defendants have filed a Motion for Summary Judgment [Doc. #59]. Following the filing of that Motion, a dispute arose between the parties over Defendants providing Plaintiff with video footage of the use of force incidents described in the Complaint. In a recent Order [Doc. #75], the Court concluded that the issue was resolved and that Plaintiff was provided and allowed to view all of the relevant footage that

existed.[1] Therefore, the Court ordered Plaintiff to file any Response to the Motion for Summary Judgment by January 28, 2022. He did not do so and Defendants' Motion for Summary Judgment is now before the Court for a ruling.

I. Summary Judgment Standard

Summary judgment is appropriate when no genuine issue of material fact exists. A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in the light most favorable to the non-moving party. Id. The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48). A mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. See, e.g., Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); see also Anderson, 477 U.S. at 248 (non-moving party may not rest upon mere allegations or denials).

---

[1] Plaintiff continues to request additional video footage. However, Defendants presented an affidavit confirming that no additional video footage exists. Therefore, as previously noted by the Court, there is nothing to compel, and the matter will be considered on the evidence presented.

2

## II. Parties' Facts

Plaintiff's unsworn Complaint alleges that on December 26, 2018, Defendant Wiley punched him in the face with handcuffs several times, causing Plaintiff to then try to protect himself from Defendant Wiley. (Complaint, § V.) Plaintiff was eventually handcuffed from behind and taken from the cell block to a receiving area. (Id.) The Complaint alleges that Defendants Neil, Beatha, White, Adams, Douglass, Locklear, Mungo, and Covington then "continue[d] to assault [Plaintiff] all the way" to the receiving area. (Id.) The Complaint also alleges that Defendant Neil packed up Plaintiff's property without proper documentation and stole it. (Id.) The Complaint further alleges that Defendants Poole and Gerald knew of these events, but let Defendant Neil assault Plaintiff and steal his property. (Id.) It also goes on to claim that Defendant Wiley's alleged assault on Plaintiff was premeditated entrapment to induce Plaintiff to retaliate so that Defendant Wiley could press criminal charges against him. (Id.) Finally, the Complaint alleges that Defendant Covington forced Plaintiff to bend over in the receiving area so that Defendant Covington could see his anal area, which Plaintiff found "degrading and demeaning." (Id.)[2]

As for Defendants, they do not directly introduce any affidavits or other sworn statements regarding the events on December 26, 2018. Instead, they introduce documents from the files of the North Carolina Department of Public Safety, including Plaintiff's prison disciplinary record and the incident report and witness statements from the day in question. The latter documents indicate that Plaintiff engaged in a verbal altercation with guards before

---

[2] The Complaint goes on to add other allegations concerning prison conditions and medical treatment. However, those allegations are not made regarding any of the Defendants that have been served or waived service.

Defendant Wiley told him to "cuff up." (Defendants' Memorandum [Doc. #60], Ex. C.) After initially disregarding the command, he appeared to comply. (Id.) However, after Defendant Wiley put handcuffs on one of Plaintiff's hands, Plaintiff turned and struck Defendant Wiley in the face with an unknown object. (Id.) Defendant Wiley then subdued Plaintiff, and he and other officers transported Plaintiff from his cell block to an area where Plaintiff and Defendant Wiley received a medical exam and were photographed. (Id.) Medical reports indicate minor injuries to both Plaintiff and Defendant Wiley, with photographs displaying more serious injuries to Defendant Wiley than to Plaintiff. (Id., Exs. C-E.) Defendants also present North Carolina's prison grievance policy and records of prison grievances filed by Plaintiff following the incident. (Id., Exs. F-I.) Those will be discussed in more detail below.

### III. Discussion

As an initial matter, the Court notes that it informed Plaintiff in a Roseboro Letter [Doc. #61] that uncontested motions are ordinarily granted and that a failure to respond to Defendants' Motion for Summary Judgment could cause the Court to consider Defendants' contentions as uncontested and to grant summary judgment in their favor. Despite the Letter and the Court's later Order to file any response and supporting evidence by January 28, 2022, Plaintiff failed to file any response. Therefore, Defendants' Motion for Summary Judgment is unopposed, and Plaintiff has presented no actual evidence in this matter. This does not automatically mean the Motion will be granted, Gardendance, Inc. v. Woodstock Copperworks, Ltd., 230 F.R.D. 438, 448 (M.D.N.C. 2005), and the Court therefore will

4

consider the Motion on the merits and determine whether any issue of material fact remains as to any claim upon which relief may be granted.

Here, Plaintiff sues Defendants in both their official and individual capacities. Defendants correctly point out that official capacity claims raised under § 1983 against state officials are generally claims against the state itself. Hafer v. Melo, 502 U.S. 21, 25 (1991). The Supreme Court has held that "state officials, sued for monetary relief in their official capacities" are not "persons" subject to suit under § 1983. Id. (citing Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989)); see also Waste Management Holdings, Inc. v. Gilmore, 252 F.3d 316, 329 (4th Cir. 2001) (citing Alden v. Maine, 527 U.S. 706, 727-28 (1999)) ("The Supreme Court has recognized that the doctrine of sovereign immunity under the Eleventh Amendment extends beyond the literal text of the Eleventh Amendment to prevent a state from being sued by one of its own citizens without its consent."). Thus, Plaintiff's official capacity claims seeking damages should be dismissed.

Regarding Plaintiff's individual capacity claims, Defendants' initial argument in favor of summary judgment is that Plaintiff failed to properly exhaust his administrative remedies. Under the Prison Litigation Reform Act of 1995 (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and the Court cannot waive that requirement. Porter v. Nussle, 534 U.S. 516, 524 (2002). Nevertheless, lack of exhaustion is an affirmative defense, Jones v. Bock, 549 U.S. 199, 216 (2007), which must be asserted by Defendants. As for what constitutes exhaustion, a plaintiff

must complete the administrative review process within the applicable institution according to the rules of the institution where an incident occurs. Id. at 218. If Plaintiff contends that administrative remedies were not "available," he must "show that a grievance procedure was not 'available,'" by "adduc[ing] facts showing that he was prevented, through no fault of his own, from availing himself of that procedure." Graham v. Gentry, 413 F. App'x. 660, 663 (4th Cir. 2011).

The Complaint states through the checking of two boxes that Plaintiff filed a grievance concerning the facts related to this case and that the grievance process was completed. (Complaint, § IV.) The process within North Carolina's prisons is governed by the Administrative Remedy Procedure (ARP) of the North Carolina Department of Public Safety, Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008), which Defendants attach as Exhibit I to their Memorandum supporting their Motion. Under the ARP, an inmate must complete three steps of review in order to fully exhaust a prison grievance. Id.; (Defendants' Memorandum, Ex. I. § .0310.) Defendants submit the sworn Declaration of Kimberly D. Grande, the Executive Director of the North Carolina Inmate Grievance Resolution Board (Defendants' Memorandum, Ex. H.). She states that she reviewed grievances filed by Plaintiff to find all grievances for which he completed the required three steps of review between the dates of December 26, 2018, and February 1, 2021. (Id. ¶ 10.) There are eleven such grievances, and she includes those grievances and the denials of the grievances as exhibits to her Declaration. None of them concern the subject matter of the Complaint before the Court. (Id., Exs. 2-12.) Grande further states that she determined from her review of the records

6

that Plaintiff filed other grievances during the relevant time period, but did not pursue those grievances through all three required steps of the administrative process. (Id. ¶ 12.)[3]

Grande's Declaration is sufficient to support a finding that the required grievance process in the North Carolina prison system consists of three steps of review, that Plaintiff knew of this process, that he had access to it generally, that he fully utilized it on a number of occasions, and that he did not utilize it to fully exhaust his administrative remedies as to the claims raised in the Complaint. He presents no contrary evidence. Therefore, Plaintiff did not properly exhaust his administrative remedies before filing the Complaint and Defendants' Motion should be granted as to all of the claims raised.[4]

---

[3] Defendants separately attach two such grievances to their Memorandum. (Memorandum, Exs. 7, 8.) These two grievances do address the subject matter of at least part of the claims in the Complaint. Submitted with those grievances are step one denials of the grievances. Defendants state on page 8 of their Memorandum that Plaintiff did not further pursue these two grievances and conclude that he, therefore, did not exhaust his administrative remedies. Grande's Declaration does not specifically address those grievances, but does generally note that Plaintiff did not fully exhaust any grievances other than those identified in the Declaration. On review, the first grievance (Ex. 7) was signed by Plaintiff on December 30, 2018, and includes claims related to the alleged assault and taking of his property on December 26, 2018, as well as other claims of improper medical care, interfering with earlier grievances, harassment and retaliation, and violations of DPS policies. That claim was denied at step one on January 18, 2019 because Plaintiff "requested a remedy for more than one incident." There is no indication that Plaintiff appealed that determination or corrected the problem and filed separate grievances, other than a separate grievance that he filed with respect to his personal property. Specifically as to his personal property, it appears that Plaintiff filed the second grievance (Ex. 8) on January 4, 2019, regarding the taking of his property on December 26, 2018. That grievance also includes discussion of other incidents when his property was logged, and it is not clear if he was also challenging other losses of his property. That grievance was denied at step one on January 17, 2019, again because he had "requested a remedy for more than one incident." It is less clear that this grievance actually did relate to more than once incident, but the process for challenging that determination was to file an appeal, which Plaintiff failed to do.

[4] The Court notes that Plaintiff has made reference to Grievance 209, which is attached to the Complaint. That grievance is also included in the Grande Declaration as having been exhausted. However, that grievance raises only two claims: 1. a complaint that staff was refusing his rights to legal material and limiting the amount of carbon paper being provided to him; and 2. a complaint that staff had obstructed the grievance process by failing to process a grievance he filed on February 26, 2019. In the narrative discussion, Grievance 209 asserts that the missing February 26, 2019 grievance raised complaints of due process violations for obstructing the grievance process in some unspecified way. Plaintiff has not provided any further information or contention.

7

In addition, Plaintiff's individual claims against Defendants also fail on various separate grounds. Defendants do not raise most of these arguments, but they can still be recognized by the Court under 28 U.S.C. § 1915, which requires that the Court "dismiss the case at any time if the court determines that – . . . (B) the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

Here, the Complaint alleges that Defendant Wiley assaulted Plaintiff by punching him in the face with handcuffs, thereby forcing Plaintiff to protect himself from the assault. It also alleges that this course of action was an intentional entrapment of Plaintiff to cause him to commit an assault for which Defendant Wiley could prosecute him. Both the Complaint and Defendants' exhibits show that Defendant Wiley was involved in pursuing criminal charges against Plaintiff based on the events of that day and that Plaintiff was convicted of assault on an officer/state employee in Scotland County. (Compl., § V; Defendants' Memorandum, Exs. A at 5 and C.) He also received a prison disciplinary conviction for assaulting staff with a

---

Taken in the light most favorable to Plaintiff, this evidence reflects that Plaintiff raised complaints regarding the grievance process at Scotland Correctional Institute, but was given at least two available options: to appeal the grievances related to the present claims (Ex. 7, 8), which he did not do, or to separate the claims, which he did not do other than the property claim (Ex. 8), which he then did not appeal. In addition, the evidence reflects multiple additional, unrelated grievances that Plaintiff thereafter filed and was able to exhaust during the rest of 2019, including two complaining that the showers were too hot, two complaining that the food trays were being unsealed by staff before being delivered to inmates, and one complaining that he was required to show his ID before receiving his medication (all included in Ex. 9). Based on the record before the Court, Plaintiff has not presented any basis to find that he did exhaust his administrative remedies as to the claims in this case or that the grievance process was not available to him. Moreover, even if Plaintiff could provide a sufficient basis to excuse his failure to exhaust by showing that he was actually prevented from filing his grievances, Plaintiff's claims would still be subject to dismissal for the reasons set out in the additional discussion, *infra*.

8

Case 1:19-cv-00674-WO-JEP   Document 78   Filed 02/17/22   Page 8 of 14

weapon. (Defendants' Memorandum, Ex. B.) Plaintiff's allegation regarding the event in the Complaint would necessarily call his state court criminal conviction into question as he could have raised both self-defense and entrapment as part of that proceeding. Indeed, Plaintiff's Complaint asserts multiple times that Defendant Wiley induced him to commit a crime so that criminal charges could be brought, and specifically asserts that this was "a defense that is suppose to have help me in court but no such luck." (Compl., § V.) Plaintiff may not pursue claims challenging his state conviction without first showing that such conviction was reversed on direct appeal, expunged by Executive Order, declared invalid by a state tribunal, or, finally, called into question by a federal court through the issuance of a writ of habeas corpus. Heck v. Humphrey, 512 U.S. 477 (1994). This would be true for the prison disciplinary conviction Plaintiff received as well. Moskos v. Hardee, 24 F. 4th 289 (4th Cir. 2022). Therefore, any claim against Defendant Wiley for the alleged initial assault is barred under Heck.

Plaintiff's claim that Defendant Neil stole his property also fails. For any claim involving the deprivation of property, where a post-deprivation remedy is available under state law, there is no procedural due process claim under § 1983 for such takings. Hudson v. Palmer, 468 U.S. 517, 533 (1984); Chamberlain v. Jordan, No. 1:06CV73, 2006 WL 3386840, at *4 (M.D.N.C. Nov. 17, 2006) (unpublished). Prisoners in North Carolina may bring actions for conversion in the state courts based on any deprivation of property. Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983).[5] Therefore, Plaintiff cannot bring a procedural due process claim under § 1983 based on the deprivation or seizure of his property. Moore v. Plaster, 266

---

[5] Based on references in Plaintiff's filings, it appears that he may actually have pursued such an action in a proceeding before the Industrial Commission. In any event, such an action was available to resolve his claim.

F.3d 928, 929-33 (8th Cir. 2001); Wilkins,714 F.2d at 6; English v. Burke County Sheriff's Office, No. 1:11-cv-144-RJC, 2012 WL 3811798, at * 3-4 (W.D.N.C. Sept. 4, 2012) (unpublished). Therefore, Plaintiff's property claim is not cognizable under § 1983 and should be dismissed for that reason.

The next allegation in the Complaint is that Defendants Neil, Beatha, White, Adams, Fisher, Douglas, Harrison, Locklear, Mungo, and Covington "continue[d] to assault [Plaintiff]" as he was transported from his cell to a receiving area. (Compl., § V.) This conclusory allegation includes no details and none have been supplied by Plaintiff during the course of this litigation. A claim must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[6] Plaintiff's allegation of an assault as to these Defendants is exactly the type of unadorned accusation and legal conclusion that fails to state a claim for relief and it should be dismissed as such.

---

[6] Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 697, respectively)).

The Complaint further alleges that Defendants Poole and Gerald knew through his grievances that Defendant Neil stole his property, but that they let her get away with it. Plaintiff makes no claim that these Defendants knew of Defendant Neil's alleged actions before she took them or that they could have stopped her. Plaintiff essentially alleges that they did not properly rule in his favor on the grievances or make her return the property she allegedly stole. However, Plaintiff has no federal right to any particular outcome concerning grievances he filed. Moreover, to the extent he is again seeking recovery of his property, as set out above Plaintiff cannot raise this claim under § 1983, but must pursue it in state courts. Plaintiff's claims against Defendants Poole and Gerald should be dismissed.

Finally, the Complaint alleges that Defendant Covington, following the incident and Plaintiff's transport to the receiving area, made Plaintiff bend over so that Defendant Covington could see his anal area. What the Complaint essentially describes is strip search and possible cavity search following an altercation between a correctional officer and an inmate. According to the incident reports in the case and the pictures attached thereto, Plaintiff struck Defendant Wiley in the face with an unknown object during their altercation. "Body cavity searches do not violate the Fourth Amendment if reasonable and not motivated by punitive intent." Bushee v. Angelone, 7 F. App'x 182, 184 (4th Cir. 2001) (citing Bell v. Wolfish, 441 U.S. 520, 545–46, 558–61 (1979)). The Complaint contains no facts supporting a conclusion that Defendant Covington conducted the search with a punitive intent. As for reasonableness, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Bell, 441 U.S. at 558 (citing cases). According to the Complaint, the intrusion was visual only,

11

Case 1:19-cv-00674-WO-JEP Document 78 Filed 02/17/22 Page 11 of 14

the search appears related to finding a weapon used to hit an officer, and it was conducted in a receiving area. That area is not described in the Complaint, but the Complaint contains no allegation that it was a public place or that anyone other than Defendant Covington could see Plaintiff's private areas. Thus, the search appears reasonable under Bell. At the very least, Defendant Covington is entitled to qualified immunity, which was raised as an affirmative defense in the Answer and was also raised in Defendants' Motion for Summary Judgment. Qualified immunity shields government officials from liability for their conduct, provided "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). If the Court determines that the conduct violated plaintiff's constitutional rights, then the Court must determine whether the right was "clearly established" at the time of the violation. A law is clearly established "when the law has been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the State." Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998) (internal quotation omitted). Here, as already stated, the search did not violate Plaintiff's rights under the circumstances of this case. He certainly did not have a clearly established right not to be visually searched for a weapon after striking an officer with an object. Summary judgment should be granted as to this claim.

For all of the reasons set out above, the Court should grant Defendants' Motion for Summary Judgment as to the Defendants served in this case. However, three Defendants, Officer Fisher, Officer Harrison, and Nurse Carol remain unserved in the case. Defendants Fisher and Harrison were allegedly part of the assault that occurred between Plaintiff's cell and the receiving area. The claims against them fail for reasons already discussed and should

be dismissed under § 1915(e)(2). Therefore, there is no reason to consider whether or not to allow further attempts to serve them. As for Defendant Carol, the Complaint alleges that Plaintiff sought medical care from her on December 27, 2018 and December 29, 2018. To state a claim based on a lack of medical care, Plaintiff would have to establish that Defendant Carol acted with "deliberate indifference" to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976); Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). More specifically,

> [a] medical need qualifies as serious if it "has been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." [Iko, 525 F.2d at 241] (internal quotation marks omitted). A defendant displays deliberate indifference where he possesses knowledge of the risk of harm to an inmate and knows that "his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs." Id. (emphasis and internal quotation marks omitted); see also Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) ("To prove deliberate indifference, plaintiffs must show that 'the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" (brackets in original) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994))).
>
> "[D]eliberate indifference entails something more than mere negligence, ... [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. "It requires that a [defendant] actually know of and disregard an objectively serious condition, medical need, or risk of harm." De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (internal quotation marks omitted). A plaintiff can satisfy this standard by showing " 'that a [defendant] knew of a substantial risk from the very fact that the risk was obvious.' " Scinto, 841 F.3d at 226 (quoting Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015)).

Durand v. Charles, No. 1:16CV86, 2016 WL 7495811, at *4 (M.D.N.C. Dec. 30, 2016) (unpublished), report and rec. adopted, 2017 WL 389108 (M.D.N.C. Jan 26, 2017). Here, the Complaint does not even set out the nature of Plaintiff's medical need, much less establish its seriousness. The only allegation in the Complaint reflects that Plaintiff was seen by two nurses immediately after the incident on December 26, 2019, and was then placed in disciplinary

13

segregation. (Compl., § V.) The Complaint further alleges that he later requested a medical appointment while he was in disciplinary segregation, but was told by Nurse Carol he would need to wait until he "came off of cell restrictions." (Compl., § V.) Plaintiff then "called for a medical emergency" on December 27, 2018, and was seen by staff that day, but the examination reflected only that his "blood pressure was a little high and [his] heart was beating a little fast" and he was returned to his cell. (Compl., § V.) No other medical information or medical need is included, and there is no indication how Nurse Carol was deliberately indifferent to a serious medical need. Therefore, the Complaint does not state any viable claim for relief and Plaintiff's claim against Defendant Carol should also be dismissed under § 1915(e)(2).

IT IS THEREFORE RECOMMENDED that Defendants' Motion for Summary Judgment [Doc. #59] be granted, that Plaintiff's claims against Defendants Fisher, Harrison, and Carol be dismissed pursuant to 28 U.S.C. § 1915(e)(2), and that this action be dismissed.

This, the 17th day of February, 2022.

                                                             /s/ Joi Elizabeth Peake
                                                United States Magistrate Judge